In re **UNIVERSAL TABLE TOP CO., INC., Bankrupt.**

**Bankruptcy No. 79–B–604.**

United States Bankruptcy Court, E. D. New York.

April 22, 1981.

Louis P. Rosenberg, Brooklyn, N. Y., for trustee.

Stark, Elman, Amron & Haberman, New York City, for Cambridge Factors.

C. ALBERT PARENTE, Bankruptcy Judge.

This matter is before the Court on the motion of Cambridge Factors, Inc. (hereafter "petitioner") dated June 4, 1980, seeking an order directing the trustee in bankruptcy of Universal Table Top Co., Inc. (hereafter "bankrupt"), John C. Corbett, to pay over certain sums of money in his possession. A hearing was held on December 18, 1980. The Court reserved decision on the priority

of administration expenses of a Chapter XI debtor in a superseding bankruptcy proceeding under the circumstances of this case.

The facts pertinent to the resolution of the issue presented are as follows.

(1) The bankrupt filed a petition for relief under the provisions of Chapter XI of the Bankruptcy Act on March 7, 1979.

(2) On March 14, 1979, the Court entered an order according petitioner the right to advance money on a secured basis to debtor, and in the event of an adjudication in bankruptcy allowed petitioner a priority equivalent to "an expense of administration of the debtor-in-possession, having priority in payment over all other expenses of administration . . ." for money advanced thereafter in accordance with the terms of the said order.

(3) On December 14, 1979, Universal Table Top Co., Inc. was adjudicated a bankrupt.

(4) On December 28, 1979, the Court ordered the sale at public auction of the bankrupt's personal property, including office furniture, equipment and inventory.

(5) At the time of the bankrupt's adjudication, the petitioner possessed a security interest in certain accounts receivable and inventory of bankrupt, which were acquired under the terms of the order of March 14, 1979.

(6) The sale of bankrupt's physical assets involved both encumbered and unencumbered assets.

(7) The proceeds of the sale of the encumbered assets were insufficient to satisfy petitioner's secured claim under the order of March 14, 1979.

(8) The bankurupt's estate is not large enough to pay petitioner's entire claim, after anticipated expenses of administration arising from the bankruptcy proceedings are accounted for.

The above findings of fact give rise to the following issue: Whether the petitioner's claim should be accorded a priority over the expenses of the trustee as a result of the Court's order of March 14, 1979. For the reasons set forth below, the Court holds it should not.

■ The petitioner's principal contention is that the Court's order of March 14, 1979, grants him an absolute "priority in payment over all other expenses of administration . . . ."

The paragraph of the order in question reads as follows:

ORDERED, that the lien granted to Cambridge Factors, Inc. by virtue of the annexed agreements and in accordance with this Order for all monies advanced to the Debtor-in-possession and in the event of an adjudication in bankruptcy, any deficiency claimed of Cambridge Factors, Inc. for monies advanced to the Debtor-in-possession shall be an expense of administration of the Debtor-in-possession, having priority in payment over all other expenses of administration . . .

The phrase relied upon by the petitioner is the penultimate phrase of that paragraph. It is qualified by the language immediately antecedent to it: the monies advanced to the debtor are to have a priority equivalent to "an expense of administration of the Debtor-in-possession . . . ."

Petitioner's view that the priority he received under the terms of the order is higher than that accorded to "an expense of administration of the Debtor-in-possession" is inconsistent with the internal logic of the order, and cannot be sustained.

Not only is petitioner's reading at odds with the plain meaning of the language of the order, it is in conflict with priorities established by Congress. The relative priorities to be accorded administration expenses is definitively set forth in the Bankruptcy Act. Section 64(a) provides in relevant part:

. . . Where an order is entered in a proceeding under any chapter of this Act directing that bankruptcy be proceeded with the costs and expenses of administration incurred in the ensuing bankruptcy proceeding, including expenses necessarily incurred by a debtor in possession, receiver, or trustee in preparing the

schedule and statement required to be filed by sections 238, 378, or 483, shall have priority in advance of payment of unpaid costs and expenses of administration including the allowances provided for in such chapter, incurred in the superseded proceeding and in the suspended bankruptcy proceeding, if any; . . .

In the language of the statute, petitioner's claim is properly characterized as an expense of administration of the debtor-in-possession in a superseded proceeding.

The language of the order, when viewed within the context of the statutory scheme governing these proceedings, subordinates the petitioner's claim to that of the trustee.

Although the repetition of the phrase "of the Debtor-in-possession" after the language relied on by the petitioner may have made the language of the order more clear, its intent remains, in our view, unmistakable.

█ Petitioner also relies on the equities of his claim. He asserts that he advanced additional money to the debtor in reliance of his interpretation of an allegedly ambiguous order. Moreover, he seeks to estop the assertion of the trustee's superior priority since "all parties were actively or constructively appraised by the Order of this Court giving Cambridge Factors the said priority and that no objection was raised thereon."

As previously discussed, the order was not so ambiguous as to justify petitioner's purported reliance. Finally, even if the Court finds that equity lies with the petitioner, which it does not, it could not grant him the relief he seeks.

█ It has long been recognized that a federal court may not allow for the accommodations of equities clearly excluded by Congress. *Matter of Penticoff*, 36 F.Supp. 1, 2 (D.Minn.1941). The Second Circuit Court of Appeals has had occasion to discuss the limited equitable jurisdiction of the court in administering Section 64(a):

> The referee and the court below grounded their action in granting priorities within the class of administration expenses upon what they believed to be the equitable powers of the court of bankruptcy. It is well settled . . . 'that bankruptcy proceedings themselves are purely equitable in their character, and within the limits prescribed by the Bankruptcy Act and the special rules of practice prescribed by the Supreme Court, are to be administered in accord with the general principles and practices of equity.' . . . But these equitable powers are to be exercised within the limits laid down by the Bankruptcy Act and subject to its specific provisions . . . . *The court may not by granting a priority which it deems equitable set aside the clear congressional mandate that no such priority shall be accorded.* (Emphasis added)

*Matter of Columbia Ribbon Co.*, 117 F.2d 999, 1002 (2d Cir. 1941) (citations omitted).

Prior to the 1952 amendment to Section 64(a), the administration claimants of a superseded debtor-relief proceeding shared pro rata with administration claimants of the ensuing proceeding. The purpose for the change was explained in the accompanying House Report:

> Unless the provision is made for payment of the costs and expenses necessary to liquidate, administer and close the estate in the ensuing bankruptcy proceeding, ahead of all prior incurred and unpaid administration costs and expenses, there is always danger of a breakdown of administration. There should be assurance to the trustee in the ensuing proceeding that the costs and expenses incurred by him such as bond premiums, insurance premiums, costs of conducting a public sale and compensation for his services and for the services of his attorney, will be paid out of the assets liquidated and administered by him ahead of the prior unpaid costs and expenses.

H.R.Report No. 2320, 82d Cong., 2d Sess., *reprinted in* (1952) U.S.Code Cong. & Ad. News 1962, 1969.

An exception to the priorities of Section 64(a) may exist. Where a creditor advances money to the debtor primarily to preserve the bankrupt's estate, good conscience and equity may require a creditor to be given a

**710**

priority outside the strictures of Section 64(a). The exception may apply where money is advanced primarily for the benefit of the bankrupt's estate. One court, for example, has accorded a non-section 64 priority to a creditor who advanced the debtor the fee necessary to file his bankruptcy petition. *Matter of Sparks*, 22 F.Supp. 886 (W.D.Okl.1938). However, where credit is advanced prior to bankruptcy to preserve the bankrupt's estate, the advance is generally deemed to be primarily for the benefit of the creditor. *In re Warner Coal Co.*, 83 F.Supp. 961 (N.D.W.Va.), aff'd 177 F.2d 718 (4th Cir. 1949).

■ Here the petitioner, a factor, advanced monies to the bankrupt in the normal course of business. He retained for his protection a security interest in the inventory and accounts he financed. These advances were plainly in pursuit of his own business purposes. Petitioner, moreover, does not seek to place himself within the scope of this exception. As it appears that the petitioner does not seek relief under this rule (and if he did, the Court could not grant his prayer under it), no further discussion on this point is necessary.

· In short, this Court sees no reason to adopt a strained interpretation of the statutory language or impose a linguistically unsound reading of the language of the order to provide petitioner with the relief he seeks.

The petitioner alternatively seeks payment of a creditor's dividend from the funds in the hands of the trustee in excess of anticipated expenses.

■ Petitioner seeks an order from this Court directing the trustee to retain a sum of $6,000 in anticipation of administrative expenses and another $3,000 in contemplation of additional expenses, and to pay the remaining funds in the trustee's possession to the petitioner. The petitioner thereby demands immediate payment of only those sums in excess of the estimated costs of administration of the bankruptcy proceeding. The $6,000 figure he asserts to be the estimated costs of administration was allegedly volunteered by the trustee in a conversation with petitioner's attorney on December 18, 1980.

Petitioner claims that failure to grant such relief will result in "unjustified" loss to him. Moreover, he asserts that no prejudice will result to any other party by this action.

This claim was raised for the first time by petitioner in an affidavit submitted in lieu of a memorandum of law, following the evidentiary hearing on the motion. To this demand, trustee makes no specific objections.

Since its adoption following the 1952 amendment of Section 65(b), Rule 308 of the Rules of Bankruptcy Procedure has governed the distribution of "dividend" payments to both secured and unsecured creditors. 3A COLLIER ON BANKRUPTCY Paragraph 65.01(2) (14th Ed. 1975).

Rule 308 invests the bankruptcy court with wide discretion to determine the manner and timing of payment. *Id.* at paragraph 65.03(1). Nevertheless, the mandate of the Rules is clear: "Dividends to creditors shall be paid as promptly as practicable . . . ."

The Court, however, will not exercise its discretion until it is assured that the threshold requirements set forth in 65(b) have been met. A major congressional concern in the amendment of Section 64(a) was to prevent the breakdown of administration. H.R. 2320, *supra.* As a result of this congressional policy, the Court today has denied petitioner's principal claim to relief. Yet, to prematurely order an excessive dividend payment may as likely disrupt the administrative process. Predicated on the present record, the Court cannot with assurance fix a proper dividend payment. Therefore, the Court has no choice but to dismiss petitioner's prayer for alternative relief as well.

An evidentiary hearing to ascertain the proper amount of such a dividend is hereby scheduled for May 27, 1981, at 10:30 in the forenoon.

SETTLE ORDER.