In re ASTROGLASS BOAT CO., INC., Debtor.

ASTROGLASS BOAT CO., INC., Plaintiff,

v.

Leonard ELDRIDGE and Joyce Eldridge, Defendants.

Bankruptcy No. 381–01496.

United States Bankruptcy Court, M.D. Tennessee.

Aug. 16, 1983.

Robert H. Jennings, Jr., M. Taylor Harris, Jr., Nashville, Tenn., for defendants.

John Bailey, Bass, Berry & Sims, Nashville, Tenn., for plaintiff.

## MEMORANDUM [1]

KEITH M. LUNDIN, Bankruptcy Judge.

The issue presented is whether the defendants are bound by a compromise and settlement of their claim contained in the debtor's confirmed plan of reorganization under Chapter 11. The confirmed plan recites and details a settlement of the defendants' claim. Nonetheless, after the confirmation order became final, the defendants filed a motion seeking allowance of their claim and damages inconsistent with the provisions of the plan. The debtor objected to the claim as barred by the compromise contained in the plan and denied liability for any damages. After review of the briefs and arguments of the parties, the exhibits, testimony, stipulations, and applicable authority, I find that the defendants' claim was compromised and extinguished and that their counterclaim should be dismissed, except to the extent of certain taxes and rents admitted by the debtor.

The following constitutes findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The plaintiff, Astroglass Boat Company, Inc. ("Astroglass") filed a petition for relief under Chapter 11 on May 7, 1981. The list of the 10 largest unsecured creditors filed with the petition included the defendants, Leonard and Joyce Eldridge ("the Eldridges") holding a claim estimated at $248,000. The debt accrued from the original purchase of Astroglass from the Eldridges, consideration for a noncompetition agreement, and certain rental payments.

Leonard Eldridge attended a meeting of unsecured creditors on June 9, 1981. Shortly after the meeting, Eldridge met with Edward W. Plodzick ("Plodzick"), an officer and director of Astroglass. Eldridge and Plodzick discussed the Astroglass bankruptcy and the Eldridges' claim and considered the possibility that unsecured creditors would receive little or no dividend if all creditors enforced their claims. Plodzick testified that Eldridge was concerned that the proceeding would be converted to Chapter 7. Plodzick testified that Eldridge offered to forego any additional claims if Astroglass return the property, with certain repairs, and surrendered the leasehold improvements. Consistent with this proposal, Plodzick told Eldridge that he would send someone to inspect the property and determine the nature and extent of the expected repairs. The leasehold improvements that Astroglass would give to Eldridge consisted of a new building that had been constructed by Astroglass and certain additions to the property including water lines and a new

---

[1] This memorandum was originally submitted on June 20, 1983 to the United States District Court for the Middle District of Tennessee as a "Report of Standing Master" as required by Administrative Order No. 28–3. The Report was transmitted to District Judge Thomas A. Wiseman for final action. Judge Wiseman, however, recused himself from consideration of the report on July 13, 1983. The Report was returned to the bankruptcy court for referral to another district judge. On August 2, 1983, before the matter had been reassigned, the District Court for the Middle District of Tennessee vacated Administrative Order No. 28–3 and reinstated Administrative Order No. 28 which authorizes the bankruptcy judges for the Middle District of Tennessee to enter final orders in proceedings such as the instant case. See Administrative Order No. 28(d). The Report is, therefore, being reissued as a "Memorandum" with a corresponding separate judgment of the bankruptcy court.

compressor. Astroglass scheduled these improvements as assets with a market value of $54,000. Eldridge denies that he agreed to compromise his claim under these terms and asserts that he only agreed to release Astroglass from the remainder of its lease in exchange for a return of the property.

After the meeting, Plodzick returned to his office and notified Jack White ("White"), the president of Astroglass, and James L. Beckner, Esq., ("Beckner"), an attorney for Astroglass, that the Eldridges' claim had been settled. At trial both White and Beckner confirmed Plodzick's contemporaneous statements that a settlement had been reached on the terms described above. Plodzick instructed White to meet with Eldridge and determine the repairs to be performed on the property. In late June, White toured the Astroglass plant with Leonard Eldridge and made a handwritten list of all repairs Eldridge requested. Immediately thereafter, Leonard Eldridge met with a potential new lessee for the Astroglass property, Bobby Pulley ("Pulley"), to discuss renting the property the following month.

The Eldridges retained William G. Wilkinson, Esq. ("Wilkinson") to represent them in the Astroglass bankruptcy. Leonard Eldridge testified that he had approximately six meetings with Wilkinson concerning the case. The Eldridges filed a proof of claim on July 13, 1981.

Astroglass filed a plan of reorganization and a disclosure statement on July 24, 1981. A hearing on the adequacy of the disclosure statement was held July 31, 1981. Wilkinson and Leonard Eldridge attended this hearing. Beckner stated in open court that the Eldridges' claim had been settled. Neither Wilkinson nor Eldridge voiced any concern or objection. The court fixed August 17, 1981 as the last day to file written acceptances or rejections of the plan. The Eldridges did not object to the plan.

The confirmation hearing was held August 21, 1981. Wilkinson represented the Eldridges at the hearing. The settlement of the Eldridges' claim was again outlined in open court. The plan compromised the Eldridges' entire unsecured claim in exchange for an immediate return of the leasehold and a surrender of all leasehold improvements. Other unsecured creditors were to receive a 30% dividend on their claims. At the confirmation hearing, Wilkinson affirmatively represented to the court that the Eldridges' claim had been settled according to the specified terms.

The confirmation order was signed on August 26, 1981. On the same day, Beckner forwarded a copy of the order to Wilkinson. Wilkinson replied by letter dated August 27, 1981 that there had been a "misunderstanding," and that the Eldridges would not settle their claim unless they also received the 30% dividend provided for the unsecured creditors. On September 2, 1981, Beckner responded that Astroglass intended to enforce the settlement outlined in the confirmation order. Consistent with the confirmed plan, Eastern Discount Corporation advanced Astroglass substantial funds to further the reorganization on September 17, 1981.

On September 24, 1981, Wilkinson filed a "Motion to Allow a Hearing to Settle Claims of Leonard Eldridge and Joyce L. Eldridge." On October 14, 1981, Astroglass objected to the claim and the bankruptcy court ordered the objection treated as an adversary proceeding. The Eldridges filed an answer to the objection on December 28, 1981. On March 12, 1982, the Eldridges filed an amended answer and a counterclaim for alleged damage to the property: $600 for a missing air conditioner, $500 for built-in desks, $12,600 to replace or repair several "chopper guns," $287.84 for light fixtures, $200.20 to replace fluorescent lights, and $2,100 for missing boat racks. The Eldridges also counterclaimed for forklift and truck damage, water problems, resurfacing an excavated area, and the removal of hardened resin from the leasehold work areas.

A trial was held December 1 and 2, 1982.

## I. THE ELDRIDGE CLAIM

The confirmation order states explicitly that the Eldridges' claim has been compro-

mised and details the material terms of settlement. The confirmation order provides that:

(b) The claims of Leonard and Joyce L. Eldridge, as stated in open court by counsel for the said Leonard and Joyce L. Eldridge and counsel for the Debtor, have been compromised and settled in full pursuant to which Mr. and Mrs. Eldridge cancelled the terms and provisions of a certain lease agreement by and between the Debtor and the said Eldridges, and the Debtor is relieved of all payments due or to become due under a certain purchase obligation and under a certain noncompete agreement by and between the Debtor and Mr. Eldridge, said claims totalling $250,000, more or less, and Mr. Eldridge receives, in consideration for the release of said claims, all fixed assets contained on the property formerly leased by the Debtor from Mr. Eldridge at Pleasant View, Tennessee, and the Debtor and Mr. Eldridge are to file an agreement to this effect with the Court on or before October 10, 1981.

The essential elements of the compromise—the return of the property, the surrender of the fixed assets and leasehold improvements, and the Eldridges' release of their claim—are unambiguously set forth.

 If the settlement detailed in the confirmation order was not an accurate reflection of the parties' intent, simple remedies were available. The Eldridges could

have moved the court to reconsider the confirmation order or appealed that order. Rule 805 of the Federal Rules of Bankruptcy Procedure allowed the defendants to obtain a stay of the confirmation order until their appeal could be addressed by providing that the bankruptcy judge "may suspend or order the continuation of proceedings or make any other appropriate order during the pendency of an appeal upon such terms as will protect the rights of all parties in interest." Rule 802 of Federal Rules of Bankruptcy Procedure, however, requires that a notice of appeal be filed within 10 days of the entry of the order.[2] No notice was filed. The record before this court does not provide an explanation why appropriate motions or an appeal were not filed. As indicated by the exchange of correspondence between Beckner and Wilkinson, both Eldridge and Wilkinson were aware of the precise contents of the confirmed plan within the time period to file an appropriate attack.[3] Rule 803 of the Bankruptcy Rules provides that "unless a notice of appeal is filed as prescribed by Rules 801 and 802, the judgment or order of the referee shall become final." *See also Martin v. First National Bank,* 573 F.2d 958 (6th Cir.1978). Because the plan and order of confirmation fixed the rights of the parties, *Occidental Petroleum Co. v. Walker,* 289 F.2d 1 (8th Cir.1961), the settlement contained in the order determines the status of the defendants' claim.[4]

2. Rule 802 of the Federal Rules of Bankruptcy Procedure provides that:

> The notice of appeal shall be filed with the referee within 10 days of the date of entry of the judgment or order appealed from.

3. The Eldridges' trial counsel argues that despite this knowledge the confirmation order is not final because it was not approved for entry by Wilkinson. The court is aware of no requirement imposed by statute, local rule, tradition, or custom that confirmation orders be approved for entry by all parties and this court will not create such a requirement. Such a prerequisite would impose a procedural nightmare and unnecessary delay to the reorganization process. The parties' rights are not prejudiced by the absence of such a requirement and are reasonably protected through a hearing on the disclosure statement, an opportunity to

vote on the plan, and a confirmation hearing. Regardless, the argument is completely irrelevant in this case where a copy of the confirmation order was sent on the date of signing to the now complaining counsel. Any question of surprise or inadequate notice is wholly without substance.

4. The Eldridges' trial counsel argues that the settlement is unenforceable as violative of the Tennessee Statute of Frauds. The Tennessee Statute of Frauds is codified at Tenn.Code Ann. § 29–2–101 (repl. vol. 1980) and provides in relevant part:

> WRITING REQUIRED FOR ACTION—No action shall be brought:
> . . . .
> (5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making thereof . . .

■ Once a confirmation order becomes final, the only remedy[5] available is to have the order set aside pursuant to Rule 60 of the Federal Rules of Civil Procedure.[6] Rule 924 of the Federal Rules of Bankruptcy Procedure makes Rule 60 applicable to bankruptcy cases. Rule 60(b) provides in pertinent part that:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a

reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

The moving party bears the burden to demonstrate one of the enumerated grounds. *See Globe Paper Co. v. Morris Travis Drug Co.,* 112 F.2d 350 (6th Cir.1940).[7]

■ Application of the Rule 60 standards presents special problems where a party is seeking to undo a final order of confirmation rather than some general order of the court because the success of a corporate reorganization demands finality to the order of confirmation.[8] Confirmation often signals the restructuring of debt and the infusion of new capital. The exe-

The statute is satisfied in four respects. First, the confirmation order is the agreement sought to be enforced and is in writing. Second, the settlement could have been and was to be satisfied within one year. Third, Astroglass had substantially performed under the settlement by vacating the premises, thereby validating the agreement. Finally, the policy of preventing fraud by encouraging writings is not furthered in the instant case where the existence of a settlement was confirmed orally in open court. Settlements may be enforced notwithstanding the absence of a writing even where the agreement was not arrived at in the presence of the court. *See Kukla v. National Distillers Products,* 483 F.2d 619, 621 (6th Cir. 1973). The statute of frauds is not determinative in this controversy.

5. The Bankruptcy Code also provides for the revocation of a final order of confirmation if the order was secured through fraud. 11 U.S. C.A. § 1144 (West 1979) allows the revocation of an order of confirmation if:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

No motion has been made for such a revocation, no grounds for fraud have been specifically pleaded, and the court finds that no inference of fraud should be drawn from the proof.

6. Confirmation of a plan is tantamount to a judgment and, therefore, relief from an order of confirmation is appropriate only if the same circumstances would warrant relief from a judgment. *Official Creditors Comm. v. Stratford of Texas, Inc.,* 635 F.2d 365, 368 (5th Cir.1981); *Bizzell v. Hemingway,* 548 F.2d 505

(4th Cir.1977). For the purpose of this proceeding, the Eldridges "Motion to Allow a Hearing to Settle Claims" will be treated as a motion to set aside a judgment under Rule 60.

7. Although the party objecting to a claim normally has the burden of proof with regard to the invalidity of the claim, where the claim has been explicitly compromised, the burden shifts to the party seeking to undo the settlement. *See Globe Paper Co. v. Morris Travis Drug Co.,* 112 F.2d 350 (6th Cir.1940). In general, the party attacking a settlement agreement bears the burden of proving its invalidity and unenforceability. *Callen v. Pennsylvania R. Co.,* 332 U.S. 625, 630, 68 S.Ct. 296, 298, 92 L.Ed. 242 (1948); *Mungin v. Calmar Steamship Corp.,* 342 F.Supp. 484 (D.C.Md.1972); *General Discount Corp. v. Sehram,* 47 F.Supp. 845 (E.D. Mich.1942).

8. Settlements are judicially favored under both federal and Tennessee law. *See Williams v. First National Bank,* 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Edwards v. Travelers Insurance Co.,* 563 F.2d 105, 116 (6th Cir.1977). Because the prompt resolution of claims and disputes makes the compromise of claims of particular importance in a bankruptcy reorganization, *see Protective Committee for Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968); *Case v. L.A. Lumber Products Co.,* 308 U.S. 106, 130, 60 S.Ct. 1, 14, 84 L.Ed. 110 (1939); *Barry v. Smith (In re New York, New Haven and Hartford Railroad),* 632 F.2d 955 (2nd Cir.1980), settlements of claims should be liberally construed and enforced.

cution of new contracts and loan agreements requires certainty for all parties involved. The events occurring immediately after expiration of the appeal period for the Astroglass confirmation order underscore this policy. Before the Eldridges notified the court of their objection, Astroglass began implementing its reorganization plan. Astroglass had vacated the premises and was preparing to administer other aspects of the plan. Some seven days before the Eldridges' motion was filed, Eastern Discount Corporation loaned substantial funds to Astroglass in reliance on the finality of the confirmation order. Although the exchange of correspondence between Wilkinson and Beckner indicated a disagreement over the settlement terms,[9] the defendants took no action to inform the court or other creditors of these potential problems until after the appeal period expired and performance commenced. Rule 60 relief is inappropriate when circumstances have so changed that prejudice will result. *Metro Property Management Co. v. Information Dialogues, Inc.,* 662 F.2d 475, 477 (8th Cir. 1981); *Trone v. Roberts Farms, Inc.,* 652 F.2d 793, 796 (9th Cir.1981). Relief under Rule 60 is not available when used to avoid the consequences of a party's decision to forego an appeal. *Sampson v. Radio Corporation of America,* 434 F.2d 315, 317 (2nd Cir.1970); *Hoffman v. Celebrezze,* 405 F.2d 833 (8th Cir.1969).

■ Notwithstanding the inappropriate nature of the relief sought, the defendants have failed to demonstrate any of the Rule 60 grounds.

The settlement was certainly not the result of mistake. The inclusion of the settlement in the confirmation order was the culmination of a series of deliberate actions by both parties. The course of conduct, considered in totality, consistently supports the existence of a settlement according to the terms proffered by Astroglass. Both Leonard Eldridge and the officers of Astroglass acted as if a settlement had been finalized. After meeting with Plodzick,[10] discussing the status of the Astroglass bankruptcy claim and inspecting the property with White, Eldridge met Pulley to discuss re-leasing the Astroglass property the next month. Pulley testified he confirmed with White that Astroglass was vacating the property. If no firm settlement had been reached, Eldridge could not have made assurances to Pulley that the building was available.

The parties' conduct during their court appearances also supports the existence of the settlement and confirms the essential terms. At the disclosure statement hearing, Beckner stated to the court that the Eldridges' claim had been settled.

> Mr. Beckner: Resolutions of Mr. Wilkinson's clients' claims, Mr. and Mrs. Eldridge, we believe that we have an agreement with them. Notice will be sent out to creditors without objections. I think the substance of that is that we would give them their property back, and they're going to waive any claim.

(Transcript of Disclosure Statement Hearing, July 31, 1981, pp. 38–39). It is undis-

---

**9.** The court cannot determine whether this "misunderstanding" stemmed from a change of heart by the Eldridges or from a miscommunication between the Eldridges and their attorney. Under either scenario, the defendants were the architects of their own destiny, and may not be allowed to rectify their choice of imprudent postconfirmation remedies at the expense of the debtor and a postconfirmation creditor.

**10.** Counsel argues that Plodzick misled Eldridge at their first meeting by telling Eldridge that the unsecured creditors might receive no dividend. Eldridge argues that any agreement reached at the meeting was the result of a mistake of fact and thus voidable. The proof,

however, is that Plodzick explained to Eldridge that a "scenario" existed under which the unsecured creditors would receive no dividend. Plodzick explained that if Murfreesboro Bank & Trust exercised its rights, if the Eldridges pursued their claim, and if other matters were not compromised, the unsecured creditors would be completely uncompensated. Plodzick's representations appear to be accurate at the time they were made. Moreover, Eldridge testified that he knew that unsecured creditors were to receive a 30% dividend in advance of the confirmation hearing and testified that he discussed the 30% dividend with his attorney prior to the hearing on confirmation.

puted that Wilkinson was present when this statement was made and neither objected nor requested clarification. Wilkinson participated actively on the Eldridges' behalf at the disclosure statement hearing and specifically questioned William P. Hoffman, executive vice-president and treasurer of Astroglass, concerning the status of the leases. (Transcript of Disclosure Statement Hearing, p. 33). It was incumbent upon Wilkinson in representing his clients' interests to inquire as to the nature of the settlement if he harbored any doubts or reservations. Wilkinson's conduct can only be logically and professionally explained if, in his opinion, a settlement had been negotiated by his client. Wilkinson made a conscious, professional decision, based upon his conversations with his clients and his perception of their intentions to acknowledge the existence of a settlement.

Several witnesses testified that Leonard Eldridge was also present at the disclosure statement hearing. Although Eldridge denies that he attended, both Beckner and Ms. Josaline Conrad testified that they observed Eldridge at the hearing. An affidavit from Paul E. Jennings, the bankruptcy judge who presided at both the disclosure statement and confirmation hearings, was submitted into evidence and supports the conclusion that Leonard Eldridge was present. The affidavit states that:

> I cannot remember whether Mr. Eldridge was in attendance at the disclosure statement or in attendance at the confirmation hearing, but I do remember that he was in attendance at one of the hearings at which resolution of his claim was announced by the Debtor.

Because the consistent testimony is that Eldridge was not present at the confirmation hearing, the affidavit confirms the fact that Eldridge was in attendance when the settlement was announced at the disclosure statement hearing. Eldridge, however, offered no protest to the announcement of the settlement and apparently did not instruct his attorney to object to the plan. Such conduct can only be interpreted as acknowledgment of a settlement.

The existence of the settlement is supported by the transcript of the hearing on confirmation. At the hearing, Beckner outlined for the court the essential elements of the settlement and Wilkinson, on his client's behalf, agreed that a settlement according to those specific terms had been reached.

> Mr. Nimmo: As to the claims of Leonard and Joyce Eldridge, their attorney is here. And I believe that those matters have been resolved, have they not, sir?
>
> Mr. Wilkinson: Yes, they have.
>
> Mr. Beckner: Your Honor, Mr. Eldridge had a claim of something in the neighborhood of $250,000, consisting of the balance of the original purchase agreement of the Astroglass Company. I think it was two or three owners before the present owners.
>
> A noncompete agreement and a lease agreement on the property. The lease agreement was modified a year or more ago to state that—I think they deleted the last three years of the lease agreement. It now has either five or seven years or something like that to run. And in exchange for deleting the last few years, Mr. Eldridge would get the leasehold improvements. So that was the status of Astro on May 7.
>
> Mr. Eldridge has said that he'll give up any claim if he can have the property back right now. And that clearly benefits us. And we want that agreement, and Mr. Eldridge wants it. We are not using that property. We haven't used it for some months. We don't need it.

(Transcript of Confirmation Hearing. August 21, 1981, pp. 28–29).

■ Wilkinson's unequivocal assent has two effects. First, his agreement evidences the fact that a settlement had been reached. According to Eldridge, Wilkinson met with his clients six times and was in the best position to know his clients' desires and represent their interests. Second, even if a settlement had not been finalized, on these facts the Eldridges are bound by Wilkinson's representation to the court. The Supreme Court has noted that:

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on his client. Petitioner voluntarily chose this attorney as his representative in the action, and cannot now avoid the consequences of the acts and omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by his lawyer agent.

*Link v. Wabash Railroad Co.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962). *See also Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1880); *Krumholz v. Goff*, 315 F.2d 575, 583 (6th Cir.1963). The Eldridges cannot be excused from their counsel's representations to the court. The defendants may not be relieved from the consequences of decisions deliberately made by their attorney, although subsequent events may reveal that such decisions were unwise. *Steinhoff v. Harris*, 698 F.2d 270, 275 (6th Cir.1983); *Federal's Inc. v. Edmonton Investment Co.*, 555 F.2d 577, 583 (6th Cir.1977). *See also Gill v. Hall*, 15 B.R. 913, 918 (Bkrtcy. 9th Cir.1981). The law is clear that "neither ignorance nor carelessness on the part of the litigant or his attorney will provide grounds for Rule 60(b) relief." *Hoffman v. Celebrezze*, 405 F.2d 833, 835 (8th Cir.1969); *Jefferson Bank v. Devault Manufacturing Co.*, 4 B.R. 382, 386 (Bkrtcy. E.D.Pa.1980).

The confirmation order was also not the result of inadvertence or surprise. The settlement did not suddenly or mysteriously materialize. The proceeding were conducted in a completely open manner. The settlement was originally reached at a meeting in June. Within a few days, Leonard Eldridge and White met and put in writing a detailed list of repairs consistent with the June meeting. The existence and nature of the settlement was discussed in open court at the disclosure statement hearing in July. The settlement was again discussed at the confirmation hearing in August. Wilkinson

and Eldridge were both familiar with the nature of the claim and were active in the bankruptcy proceedings. Leonard Eldridge attended meetings of the unsecured creditors. Eldridge and Wilkinson had six meetings regarding the bankruptcy. Both Wilkinson and Eldridge attended the hearing on the disclosure statement and did not question the proffered settlement. Eldridge was notified of the pending confirmation of the Astroglass plan of reorganization and acknowledged receipt of the disclosure statement, the plan, and a ballot for voting. Eldridge knew that the plan of reorganization proposed a 30% dividend to unsecured creditors and testified that he discussed the 30% dividend with his attorney before the confirmation hearing. Wilkinson confirmed the nature of the settlement at the confirmation hearing on his clients' behalf. The confirmed plan cannot be reasonably explained as the result of mistake, inadvertence, or surprise.

■ The Eldridges' explanation of the events is not only contradicted by the proof but is logically impossible to accept. Leonard Eldridge contends that if an agreement was reached with Plodzick, it was only to reclaim the leasehold from Astroglass and not to compromise the claim. Eldridge offers no plausible explanation why Astroglass would agree to surrender the leasehold to the Eldridges without any concessions from the Eldridges'. The lease and leasehold improvements were substantial assets which could have been used or sold by Astroglass. It is, however, quite logical that the Eldridges were willing to compromise their claim in the manner outlined in the order. It was in the Eldridges' economic best interest to encourage a quick settlement. The Eldridges received the leasehold for which they had an immediate lessee. If the leasehold continued as property of the estate, its return could have been considerably delayed. The Eldridges also received substantial leasehold improvements which were constructed by Astroglass at its expense and valued at over $54,000.[11] The

11. The court rejects defendant's suggestion that the settlement fails for want of considera-

Eldridges also avoided the risk that the proceeding would be converted to a Chapter 7 liquidation. The defendants have failed to demonstrate the requisite elements to set aside the confirmation order.

## II. THE COUNTERCLAIM

The Eldridges' counterclaim should be dismissed except for $1,351.29 in pro rata property taxes and $3,780 in rent admitted by the debtor. The Eldridges counterclaimed for damages to the leasehold including the replacement of an air conditioner, some built-in desks, several "chopper guns," light fixtures, flourescent lights, and a number of boat racks. The Eldridges also sought compensation for alleged forklift and truck damage, water damage, the resurfacing of an excavated area, and the removal of hardened resin.

▌ The Eldridges' failed to prove Astroglass' liability for the asserted damages. Astroglass denies that it committed or is responsible for any of the alleged damage. The lease does not require Astroglass to replace either light bulbs or flourescent lights, nor does it detail what obligations were undertaken to make repairs. The lease, however, provides that fixtures and items of furniture such as the air conditioner and the desks would remain property of Astroglass and, therefore, are not property recoverable by the Eldridges. The proof reveals that the other "damages" existed for many years prior to this controversy and were never objected to by the Eldridges except in this proceeding. For example, the Eldridges' allege that they are entitled to the replacement of 84 boat racks. Leonard Eldridge testified that he was aware

that the boat racks were removed long before the filing of the bankruptcy and that he had not protested their removal nor requested compensation from Astroglass. Similarly, the damaged chopper guns, the recurring water problem, and the hardened resin were all problems which, although apparent and known to the Eldridges, received no attention or concern in the years prior to the filing of the Astroglass chapter 11.

The only convincing proof regarding damages was that Astroglass is obligated to make the repairs agreed to by Plodzick and Leonard Eldridge at their meeting in June of 1981. Plodzick sent White out to the Astroglass plant to ascertain the nature and extent of those repairs. White's handwritten list of repairs was admitted in evidence as plaintiff's Exhibit # 2. The list specified that Astroglass was to replace an office window, check the ceiling for moisture, caulk the office windows, repair the corner of the new building, repair or replace door in the rear storage building, haul off drums and trash, repair the gate, and clean the gutters and check them for leaks. The cost of these repairs was estimated at between $3,000 and $5,000. Astroglass admits that it is obligated to make these repairs, but has failed to perform because of this proceeding. Astroglass should be ordered to promptly satisfy this obligation, either by making the repairs or paying the reasonable value of the repairs.

Accordingly, I find that the plaintiff's objection should be sustained and the defendants' counterclaim should be dismissed with the exception noted—the plaintiff should be ordered to pay the $3,780 rent

---

tion. Counsel cites Tennessee cases indicating that a landlord may be entitled to keep leasehold improvements. Although this may be the case if the lease is silent as to the status of fixtures, equipment or improvements, the lease agreement between the Eldridges' and Astroglass provided:

FURNITURE AND EQUIPMENT: All fixtures and equipment, including signs, as shall have been installed by the LESSEE shall remain its property and may be removed by it at the expiration of the term, provided that LESSEE shall, at its own expense, repair any

injury to the premises resulting from the original installation...

Although the precise value of the various equipment, fixtures, and furniture was not ascertained at trial, the Astroglass schedules estimate the value at approximately $54,000. No contrary proof was offered. The property is clearly of substantial value and the court should not undertake to police the amount of the consideration. *Townsend v. Neuhardt,* 139 Tenn. 695, 203 S.W. 255 (1918); *Danheiser v. Germania Savings Bank & Trust Co.,* 137 Tenn. 650, 194 S.W. 1094 (1917).

delinquency, and the $1;351.29 tax assessment. If Astroglass cannot or will not make the repairs indicated on White's list, or if the repairs have already been made, the parties should ascertain the precise monetary value of the allowed repairs and Astroglass should reimburse the Eldridges.[12]

An appropriate order will be entered.

12. Because the court finds that the Eldridges' claim is completely extinguished by the settlement, the question of whether the claim should be discounted to present value is not addressed.