In re the **BLANTON SMITH CORPORA-TION, d/b/a Greenbrier Egg Farms, Greenbrier Feed Mill, and the Blanton Smith Hatcheries, and Grubbs Farms, Inc.**

Civ. A. Nos. 3-85-1161, 3-85-0273.

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 13, 1987.

G. Ray Bucy, M. Taylor Harris, Jr., Nashville, Tenn., for Nashville City Bank.

Richard C. Kennedy, Kyle R. Weems, Chattanooga, Tenn., for Thomas E. Ray, trustee.

Paul E. Jennings, Nashville, Tenn., for defendants.

William Lamar Newport, Nashville, Tenn., for Al Phillips Ins. Agency.

## MEMORANDUM

HIGGINS, District Judge.

The debtors, The Blanton-Smith Corporation and Grubbs Farms, Inc. (debtors), filed a voluntary petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.*, on April 9, 1980. The appellants, Nashville City Bank (NCB), Al Phillips Insurance Agency, Inc. (Al Phillips) and the Grubbs family, were administrative creditors of the debtors. During the reorganization effort, the debtors and reorganization trustee, Irwin A. Deutscher, obtained a line of credit loan from NCB. After several attempts at developing a plan of reorganization, the debtors and the trustee proposed a second amended plan of reorganization. NCB, however, as a priority administrative creditor under § 507(a)(1) of the Bankruptcy Code, 11 U.S.C. 507(a)(1), objected to the proposed plan of reorganization [1] pursuant to § 1129(a)(9)(A), 11 U.S.C. § 1129(a)(9)(A), which provides:

(a) The court shall confirm a plan only if all of the following requirements are met:

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title [11 U.S.C. § 507(a)(1) or (2)], on the effective date of the plan, the holder of such claim will receive on ac-

1. Appellants Al Phillips and the Grubbs family, also priority administrative creditors, lodged similar objections.

count of such claim cash equal to the allowed amount of such claim; ...

NCB objected because the proposed second amended plan failed to provide for cash payment of its administrative claim.

At the plan confirmation hearing on May 4, 1983, a settlement was reached. NCB agreed to refinance the line of credit loan with no principal reduction required for one year, and further agreed to withdraw its objection to the proposed plan. In return, the proposed second amended plan was further amended to grant NCB a perfected security interest in 75 percent of all preferences recovered by the trustee pursuant to § 547 of the Bankruptcy Code, 11 U.S.C. § 547, subordinated only to the trustee's cost of recovery. Appellants Al Phillips and the Grubbs family received a similar security interest in 25 percent of recovered preferences.

The bankruptcy court approved the proposed second amended plan including the additional provisions set forth above. Upon recommendation of the bankruptcy court, the district court entered a confirmation order on June 16, 1983. The confirmation order provides with respect to the security interest granted NCB, Al Phillips and the Grubbs family as follows:

Said security interest shall be indefeasible and shall survive any subsequent sale of assets of the reorganized debtors, and shall be fully recognized in the event of subsequent liquidation of the debtor or debtors.

In its order confirming the plan, the district court specifically found:

[T]he Plan complies with applicable provisions of Chapter 11 of Title 11 of the United States Code, that the proponent of the Plan has complied with all applicable provisions of Chapter 11, that said Plan was proposed in good faith and not by any means forbidden by law, ....

In October of 1983, the debtors' business operations ceased and Deutscher resigned from the post of reorganization trustee. The bankruptcy court appointed a new trustee, Thomas E. Ray, on October 18, 1983. Under the provisions of the confirmed plan, the trustee was the majority voting shareholder of the debtors. As such, he applied for and received from the bankruptcy court an order (entered November 25, 1983) converting the case to a case under Chapter 7 of the Bankruptcy Code pursuant to § 1112(b), 11 U.S.C. § 1112(b). Section 1112(b) provides in pertinent part:

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter [11 U.S.C.S. §§ 1101 et seq.] to a case under chapter 7 of this title [11 U.S.C.S. §§ 701 et seq.] or may dismiss a case under this chapter [11 U.S.C.S. §§ 1101 et seq.], whichever is in the best interest of creditors and the estate, for cause, including—

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan; ...

In the memorandum filed with its order converting the case to one under Chapter 7, the bankruptcy court noted that the confirmed plan of reorganization, while representing "a potpourri of compromises and settlements with the various creditors of the estate ..., was nevertheless confirmed by the court since it had the approval of virtually all the creditors and conformed with the provisions for confirmation set forth in 11 U.S.C.A. § 1129." The court further noted, however, that the plan "began to flounder immediately after confirmation." The conditions from § 1112 set forth above had clearly been met in this case. As stated by the court:

These Chapter 11 debtors are clearly 'beached whales' which have no opportunity to reorganize. The reorganized debtor has ceased operations and is in material default to virtually all creditors under the plan.

Prior to the conversion of this case, the appellants filed motions with the bankruptcy court on November 22, 1983, seeking an order directing the trustee to comply with the provisions of the confirmed plan. The bankruptcy court denied the appellants' motions on October 24, 1984, 44 B.R. 73. The appellants moved to alter or amend

that order. The bankruptcy court denied those motions on January 17, 1985, 53 B.R. 5. The appellants filed their notices of appeal on January 28, 1985. The appellants Al Phillips and the Grubbs family have adopted the position of NCB on appeal.

Jurisdiction is based upon 28 U.S.C. § 158.

For the reasons set forth below, the orders of the bankruptcy court entered October 24, 1984, and January 17, 1985, are reversed.

■ The orders of the bankruptcy court and the appeals taken therefrom raise several issues. The decisive issue before the Court, however, is whether the order confirming the plan of reorganization is *res judicata* such that even if based upon an error of law, the provisions granting security interests to the appellants were not subject to reconsideration by the bankruptcy court. If the confirmation order is given such effect, the remaining issues become moot.

In an early decision under the former Bankruptcy Act, the Sixth Circuit stated that:

> The order confirming a plan of reorganization is not the equivalent of a judgment and is no more than a step in the administration of the debtor's estate and does not terminate jurisdiction of the court.

*Wright v. City National Bank & Trust Co.,* 104 F.2d 285, 287 (6th Cir.1939). In a prior decision, though, the Supreme Court determined that the order confirming a plan of reorganization is *res judicata. Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), *reh den'd,* 305 U.S. 675, 59 S.Ct. 250, 83 L.Ed. 437 (1938). In subsequent decisions, the courts of other circuits, relying on *Stoll,* have held a confirmation order to be equivalent to a judgment. In *Miller v. Meinhard–Commercial Corporation,* 462 F.2d 358, 360 (5th Cir. 1972), the Fifth Circuit stated:

> An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court, and any attempt by the parties or those in privity

with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine *res judicata.* (citations omitted).

*See also, In Re Stratford of Texas, Inc.,* 635 F.2d 365, 368 (5th Cir.1981); *Bizzell v. Hemingway,* 548 F.2d 505, 507 (4th Cir. 1977). Recent decisions by bankruptcy courts in this circuit have given the same effect to confirmed plans of reorganization, holding them to be binding upon all parties such that "issues that could have been raised pertaining to such plan are barred by the doctrine of res judicata." *Matter of Silver Mill Frozen Foods, Inc.,* 23 B.R. 179, 183 (Bankr.W.D.Mich.1982). "Confirmation of a plan is tantamount to a judgment and, therefore, relief from an order of confirmation is appropriate only if the same circumstances would warrant relief from a judgment." *In Re Astroglass Boat Co., Inc.,* 32 B.R. 538, 543 n. 6 (Bankr.M.D. Tenn.1983) (citations omitted). In applying the doctrine of *res judicata,* the bankruptcy court in *Astroglass* enunciated the policy supporting such an application:

> [T]he success of a corporate reorganization demands finality to the order of confirmation. Confirmation often signals the restructuring of debt and the infusion of new capital. The execution of new contracts and loan agreements requires certainty for all parties involved.

*Astroglass,* 32 B.R. at 543. The bankruptcy court further noted:

> Settlements are judicially favored under both federal and Tennessee law. Because the prompt resolution of claims and disputes makes the compromise of claims of particular importance in a bankruptcy reorganization, settlements of claims should be liberally construed and enforced.

*Id.,* at 543 n. 8. Additional support for treating an order of confirmation as a judgment is found in § 1141 of the Bankruptcy Code which provides in pertinent part:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section the provisions of a confirmed plan bind the debtor, any entity acquiring property under

the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

The Court finds on the basis of the above cited authority that generally an order confirming a plan of reorganization is to be treated as *res judicata*. The effect of such treatment was explained by the Supreme Court in *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398–399, 101 S.Ct. 2424, 2428–2429, 69 L.Ed.2d 103, 108–109 (1981);

A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Nor are the res judicata consequences of a final unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.... [A]n "erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to rely upon the plea of res judicata.... A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attacks, but can be corrected only by a direct review and not by bringing another action upon the same [cause of action]." We have observed that "[t]he indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of res judicata to avert." (citations omitted).

In the case at bar, the plan of reorganization was confirmed on June 16, 1983, by the

district court upon recommendation of the bankruptcy court. As noted by Judge Paine of the bankruptcy court in his subsequent order and memorandum converting the case to one under Chapter 7, the plan "had the approval of virtually all the creditors and conformed with the provisions for confirmation set forth in 11 U.S.C.A. § 1129 (West 1979)." There was no modification of the plan after the confirmation hearing on May 4, 1983, or after the order of confirmation on June 16, 1983, as provided for in § 1127(b) of the Bankruptcy Code. Nor, was there a motion to revoke the order of confirmation pursuant to § 1144. There was also no appeal taken from the order of confirmation pursuant to former Bankruptcy Rule 801.[2] A motion to reconsider pursuant to former Bankruptcy Rule 307[3] was also not made.[4] Finally, there was no motion for relief from the order of confirmation pursuant to Rule 60(b), Federal Rules of Civil Procedure, made applicable to bankruptcy cases by former Bankruptcy Rule 924 (current Rule 9024).

■ The court in *Astroglass* found that "once a confirmation order becomes final, the only remedy [absent a revocation under § 1144] is to have the order set aside pursuant to Rule 60 of the Federal Rules of Civil Procedure." 32 B.R. at 543. Rule 60(b) provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, or excusable neglect; ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; ... (6) any other reason justifying relief from the operation of the judgment.

Should a party move to set aside an order of confirmation under Rule 60(b), that par-

**2, 3.** The current Bankruptcy Rules did not become effective until August 1, 1983, after the date of the order of confirmation in this case.

**4.** The trustee-appellee relies on current Rule 3008 for the proposition that the bankruptcy court may reconsider a final order *sua sponte* at

any time. Rule 3008 was not, however, in effect at the time of this order. Moreover, the rule only provides for a party to move for reconsideration, with discretion vested in the court to determine whether or not to reconsider an order.

ty would bear the burden of demonstrating one of the above grounds. *Globe Paper Co. v. Morris Travis Drug Co.*, 112 F.2d 350 (6th Cir.1940). In the case at bar, there is no allegation of fraud. It appears that the sole basis upon which the bankruptcy court denied the appellants' original motions and subsequent motions to alter or amend was the court's determination "that the parties could not, in a Chapter 11 plan, agree to grant super-priority to Chapter 11 administrative expenses unless they entered into an 11 U.S.C. § 364 (West 1979) financing order." (Bankruptcy Court order entered January 17, 1985). Even if the bankruptcy court was correct in its subsequent determination that the plan provision in question is improper and hence was erroneously confirmed, Rule 60(b) provides no remedy. Absent a lack of jurisdiction on the part of the district court, the order of confirmation is neither void nor a mistake under Rule 60(b) merely because there may have been judicial error. *See, In Re Texlon Corp.*, 596 F.2d 1092, 1099–1100 (2d Cir.1979). There being no other reason warranting relief, the Court finds that the order of confirmation is not subject to being set aside under Rule 60(b).

The trustee-appellee nonetheless relies on a number of cases for the proposition that the order of confirmation in this case was subject to reconsideration by the bankruptcy court and should not be treated as *res judicata* in the subsequent Chapter 7 proceedings. The Court does not agree. Each of the cases relied upon by the appellee is clearly distinguishable and unpersuasive. The trustee relies heavily on *Matter of Silver Mill Frozen Foods, Inc., supra.* The court in *Silver Mill* acknowledged that the doctrine of *res judicata* generally applies to an order of confirmation. The court, nonetheless, found that in that case, the confirmed plan became a nullity upon conversion of the case to one under Chapter 7. The basis for that holding, however, was that the confirmed plan of reorganization itself provided for conversion to Chapter 7 in the event of default. From that plan provision, the *Silver Mill* court found that the parties had "implicitly agreed" that upon conversion they would no longer

be limited to the provisions of the plan but rather, they would be entitled to the rights and protections of Chapter 7. In the case at bar, the parties had no such "implicit agreement." In fact, the plan provisions granting perfected security interests to the appellants provide for their continued application even in the event of a liquidation. The Court therefore finds the *Silver Mill* case to be unpersuasive.

The Court also finds the appellee's reliance on *In Re Universal Table Top Co., Inc.*, 10 B.R. 706 (Bankr.E.D.N.Y.1981) to be ill-founded. In *Table Top*, the bankruptcy court entered the equivalent of a § 364 financing order in a Chapter 11 case. The order granted a creditor the right to advance money on a secured basis and allowed the creditor a priority equivalent to " 'an expense of administration of the debtor-in-possession, having priority in payment over all other expenses of administration.' " *Id.*, at 708. In declining to accord the creditor priority over Chapter 7 administrative expense claimants, the bankruptcy court relied on the very language of its prior order granting the security interest:

> The phrase relied upon by the petitioner is the penultimate phrase of that paragraph. It is qualified by the language immediately antecedent to it: the monies advanced to the debtor are to have a priority equivalent to "an expense of administration of the Debtor-in-possession...."

> Petitioner's view that the priority he received under the terms of the order is higher than that accorded to "an expense of administration of the Debtor-in-possession" is inconsistent with the internal logic of the order, and cannot be sustained.

*Id.* The order at issue in *Table Top* is clearly distinct from that at issue in the case at bar which gave the appellants a perfected security interest, not merely a priority equivalent to that of a debtor-in-possession. More importantly, the court in *Table Top* did not refuse to enforce the terms of the prior order upon conversion to a Chapter 7 case; rather, it looked to the

language of the order and strictly enforced it.

The cases of *In Re Monach Circuit Industries, Inc.,* 41 B.R. 859 (Bankr.E.D. Penn.1984), and *Klapper v. Danning (In the Matter of Minskoff–Dorman Co.),* 444 F.2d 516 (9th Cir.1971), upon which the appellee relies are equally distinguishable. In both cases, the bankruptcy court reviewed prior orders from Chapter 11 proceedings after the cases were converted to ones under Chapter 7. However, unlike in the case at bar, in both of those cases the orders reviewed were merely approvals of stipulations between a single creditor and the debtor-in-possession or his representative. In fact, in *Monach* the stipulation was approved without notice to the other creditors. The Court finds such circumstances to be completely contrary to those in the case at bar in which there was a plan confirmation hearing, a recommendation by the bankruptcy court, confirmation by the district court, and a finding by the bankruptcy court in its subsequent conversion order that virtually all creditors had approved the plan.

Finally, the appellee asserts that the case of *In Re Texlon Corp., supra,* is authority for the bankruptcy court's denial of the appellants' motions. The Court does not agree. In *Texlon,* the bankruptcy court entered a financing order under former § 344 of the Bankruptcy Act. The order was entered *ex parte.* On appeal, the Second Circuit held that such a financing scheme should not have been granted by an *ex parte* order and hence was unenforceable in a subsequent Chapter 7 proceeding. As an additional ground for reviewing the prior order, the court relied on the cases of *Wayne United Gas Co. v. Owens–Illinois Glass Co.,* 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557 (1937), and *Pfister v. Northern Illinois Finance Corp.,* 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146 (1942) *reh den'd,* 317 U.S. 714, 63 S.Ct. 523, 87 L.Ed. 568 (1943). The Second Circuit held that the reasoning of these two cases allows the vacation or modification of orders of the bankruptcy court after reconsideration by the bankruptcy court upon application by a party. Such action by the bankruptcy court requires, however, that the application be made "before rights have vested on the faith of its action" and that "no intervening rights will be prejudiced by its action." *Wayne,* 300 U.S. at 137, 57 S.Ct. at 386. The Court finds that contrary to *Texlon,* in the case at bar, the rights of the appellants were clearly jeopardized by the bankruptcy court's denial of the appellants' motions, which effectively operated as a reconsideration of the order of confirmation. The appellants, in reliance on the secured status granted them by the plan, withdrew their objections to the plan and waived their right to demand immediate payment of their Chapter 11 administrative expense claims. The Court finds therefore that the reasoning of *Wayne* and *Pfister* applied by the Second Circuit in *Texlon* fails to support the bankruptcy court's action in this matter. The Court concludes that the order of confirmation entered June 16, 1983, is to be treated as *res judicata* and the provisions at issue herein are to be enforced and applied by the bankruptcy court in the pending Chapter 7 proceedings.[5] These actions are accordingly remanded to the bankruptcy court for further proceedings in accordance with this opinion.

An appropriate order will be entered.

---

**5.** In light of its holding, the Court need not reach the issue raised by footnote 5 of the bankruptcy court's memorandum of October 24, 1984.