**In re W.F. MONROE CIGAR CO., Debtor.**

**W.F. MONROE CIGAR CO., Plaintiff,**

v.

**UNITED STATES of America (Department of the Treasury, Internal Revenue Service), and State of Illinois (Department of Revenue and Department of Employment Security), Defendants.**

**Bankruptcy Nos. 90 B 22475, 91 A 1301.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 23, 1993.

As Amended on Grant of Reconsideration Sept. 1, 1993.

**126**

Attorney for Debtor: Max Chill, Chill, Chill & Radtke, P.C., Chicago, IL, for plaintiff, debtor.

Calvin C. Curtis, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant Dept. of Treasury, I.R.S.

James D. Newbold, Asst. Atty. Gen., Chicago, IL, for defendant State of IL Departments of Revenue and Employment.

## MEMORANDUM DECISION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

This matter comes before the Court on the cross-motions for summary judgment filed by the United States of America and the State of Illinois. The debtor, W.F. Monroe Cigar Co., filed an interpleader action. In the motion for summary judgment, the United States of America (Department of the Treasury, Internal Revenue Service) contends it has a prior perfected security interest in funds held by W.F. Monroe Cigar Company (Debtor). The State of Illinois (Departments of Revenue and Employment Security) on the other hand asserts a prior perfected security interest in the same funds. Based on the following, the Court denies the cross-motions for summary judgment.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K) and (*O*).

## UNDISPUTED FACTS

The facts giving rise to this action are relatively undisputed. The Debtor holds approximately $310,000 in escrow that is available for distribution. The Internal Revenue Service (IRS), the Illinois Department of Revenue (IDR) and the Illinois Department of Employment Security (IDES) are creditors of the Debtor. Each of these three parties asserts an interest in a portion or all of the funds. There are insufficient funds to satisfy all of the parties' claims. Consequently, the parties have asked this Court to determine their respective interests in the funds held.

The Debtor has been involved in two bankruptcies. W.F. Monroe filed a petition for relief under Chapter 11 on December 24, 1984 and a plan was confirmed on July 29, 1986. On December 3, 1990, W.F. Monroe filed the pending petition under Chapter 11.

### Nature of IRS's claim

The IRS made the first assessments against the Debtor prior to the filing of its first bankruptcy in 1984 and made its next assessment on May 25, 1987. The IRS made a number of additional assessments

in the period preceding this bankruptcy.[1] The IRS failed to record its notice of lien for these assessments until October 1990. The amounts assessed are also in dispute.

### Nature of IDR's claim

The IDR's first assessment occurred during the Debtor's first bankruptcy and prior to the date Debtor's first plan was confirmed. (IDR Exhibit B). The remaining IDR assessments occurred after the IRS's 1987 assessment and were recorded at various times subsequent.[2] The amounts assessed have not been disputed.

1. The table of the IRS assessments and recordings is as follows:

| Assessment Number | Assessment Date | Taxable Period | Amount of Assessment | Date lien was recorded |
|---|---|---|---|---|
| 1. | 09/17/84 | 03/83 | 60,703.87 | 10/09/90 |
| 2. | 10/01/84 | 04/83 | 13,621.37 | 10/09/90 |
| 3. | 10/01/84 | 04/83 | 187,224.40 | 10/09/90 |
| 4. | 12/17/84 | 01/84 | 81,763.22 | 10/09/90 |
| 5. | 12/17/84 | 02/84 | 154,126.77 | 10/09/90 |
| 6. | 05/25/87 | 03/84 | 177,930.42 | 10/09/90 |
| 7. | 05/25/87 | 04/84 | 30,667.26 | 10/09/90 |
| 8. | 05/25/87 | 04/84 | 74,426.13 | 10/09/90 |
| 9. | 06/22/87 | 04/83 | 60,414.97 | 10/09/90 |
| 10. | 10/19/87 | 03/87 | 55,260.48 | 10/09/90 |
| 11. | 09/04/89 | 02/88 | 92,941.90 | 10/09/90 |
| 12. | 09/04/89 | 03/88 | 82,602.05 | 10/09/90 |
| 13. | 09/04/89 | 04/88 | 78,028.96 | 10/09/90 |
| 14. | 09/04/89 | 01/89 | 71,835.15 | 10/09/90 |
| 15. | 09/11/89 | 04/88 | 1,896.51 | 10/09/90 |
| 16. | 08/20/90 | 04/87 | 37,277.62 | 10/09/90 |
| 17. | 11/05/90 | 01/88 | 88,596.58 | 10/09/90 |
| 18. | 11/05/90 | 02/89 | 66,335.68 | 10/09/90 |

(IDR Exhibit C).

2. The table of the IDR assessments is as follows:

| Assessment Number | Assessment Date | Taxable Period | Amount of Assessment | Date lien was recorded |
|---|---|---|---|---|
| 1. | 07/28/86 | 04/84 | 4,133.12 | 08/06/86 |
| 2. | 03/04/88 | 03/87 & 11/86 | 1,765.89 | 10/09/90 |
| 3. | 03/04/88 | 11/87 | 1,685.54 | 10/09/90 |
| 4. | 03/04/88 | 03/87 | 3,974.76 | 10/09/90 |
| 5. | 03/11/88 | 09/87 | 774.41 | 10/09/90 |
| 6. | 03/11/88 | 09/87 | 10,268.53 | 10/09/90 |
| 7. | 03/11/88 | 08/87 | 1,111.94 | 10/09/90 |
| 8. | 03/11/88 | 08/87 | 20,380.25 | 10/09/90 |
| 9. | 03/11/88 | 07/87 | 1,167.64 | 10/09/90 |
| 10. | 03/11/88 | 06/87 | 1,274.18 | 10/09/90 |
| 11. | 03/11/88 | 06/87 | 3,131.36 | 10/09/90 |
| 12. | 03/11/88 | 05/87 | 1,169.05 | 10/09/90 |
| 13. | 03/11/88 | 04/87 | 1,225.60 | 10/09/90 |
| 14. | 07/08/88 | 03/88 | 4,398.50 | 10/09/90 |
| 15. | 07/08/88 | 02/88 | 3,113.32 | 10/09/90 |
| 16. | 07/08/88 | 12/87 | 3,544.84 | 10/09/90 |
| 17. | 09/06/89 | 09/88 | 1,103.92 | 10/09/90 |
| 18. | 09/06/89 | 08/88 | 1,244.03 | 10/09/90 |
| 19. | 09/06/89 | 12/88 | 1,721.59 | 10/09/90 |
| 20. | 09/06/89 | 11/88 | 1,191.80 | 10/09/90 |
| 21. | 09/06/89 | 10/88 | 1,158.79 | 10/09/90 |
| 22. | 09/06/89 | 07/88 | 1,141.89 | 10/09/90 |

### Nature of IDES's claim

Like the IDR, the IDES's initial assessments were made and recorded during the pendency of the Debtor's first bankruptcy. (IDR Exhibit A). The remaining assessments occurred during the period between 1988 and 1990.[3] The amounts assessed have not been disputed.

| Assessment Number | Assessment Date | Taxable Period | Amount of Assessment | Date lien was recorded |
|---|---|---|---|---|
| 23. | 09/06/89 | 01/89 | 1,327.41 | 12/05/89 |
| 24. | 09/06/89 | 12/88 | 13,167.41 | 12/05/89 |
| 25. | 09/06/89 | 11/88 | 2,174.73 | 12/05/89 |
| 26. | 09/06/89 | 10/88 | 15,764.83 | 12/05/89 |
| 27. | 09/06/89 | 09/88 | 17,750.15 | 12/05/89 |
| 28. | 09/06/89 | 08/88 | 20,154.79 | 12/05/89 |
| 29. | 09/06/89 | 07/88 | 18,646.41 | 12/05/89 |
| 30. | 09/06/89 | 06/88 | 22,591.14 | 12/05/89 |
| 31. | 09/06/89 | 05/88 | 24,638.56 | 12/05/89 |
| 32. | 09/06/89 | 02/89 | 224.44 | 12/05/89 |
| 33. | 12/01/89 | 02/88 | 1,556.23 | 09/10/90 |
| 34. | 12/01/89 | 04/88 | 2,002.49 | 09/10/90 |
| 35. | 12/01/89 | 01/89 | 1,909.16 | 09/10/90 |
| 36. | 12/01/89 | 02/89 | 1,467.95 | 09/10/90 |
| 37. | 12/08/89 | 03/88 | 2,189.93 | 09/10/90 |
| 38. | 02/17/90 | 03/89 | 380.83 | 09/10/90 |
| 39. | 11/07/90 | 03/89 | 20,178.91 | 10/24/90 |
| 40. | 11/07/90 | 04/89 | 16,439.47 | 10/24/90 |
| 41. | 11/07/90 | 05/89 | 20,431.20 | 10/24/90 |
| 42. | 11/07/90 | 06/89 | 18,015.57 | 10/24/90 |
| 43. | 11/07/90 | 07/89 | 14,168.99 | 10/24/90 |
| 44. | 11/07/90 | 08/89 | 17,603.50 | 10/24/90 |
| 45. | 11/07/90 | 09/89 | 14,693.10 | 10/24/90 |
| 46. | 11/07/90 | 10/89 | 17,568.79 | 10/24/90 |
| 47. | 11/07/90 | 11/89 | 16,390.56 | 10/24/90 |
| 48. | 11/07/90 | 12/89 | 19,851.25 | 10/24/90 |
| 49. | 11/07/90 | 01/90–03/90 | 42,826.80 | 10/24/90 |
| 50. | 11/07/90 | 04/90–06/90 | 37,416.22 | 10/24/90 |

(IDR Exhibit B).

**3.** The table of the IDES assessments and recordings is as follows:

| Assessment Number | Assessment Date | Taxable Period | Amount of Assessment | Date lien was recorded |
|---|---|---|---|---|
| 1. | 01/06/86 | 01/83 | 8,449.60 | 02/10/86 |
| 2. | 01/06/86 | 02/83 | 27,649.46 | 02/10/86 |
| 3. | 01/06/86 | 03/83 | 17,048.58 | 02/10/86 |
| 4. | 01/06/86 | 04/83 | 11,727.97 | 02/10/86 |
| 5. | 01/06/86 | 01/84 | 33,879.25 | 02/10/86 |
| 6. | 01/06/86 | 03/84 | 15,849.09 | 02/10/86 |
| 7. | 01/06/86 | 04/84 | 11,082.69 | 02/10/86 |
| 8. | 09/23/88 | 01/85 | 35,381.46 | 09/14/89 |
| 9. | 09/23/88 | 02/85 | 30,012.34 | 09/14/89 |
| 10. | 09/23/88 | 03/85 | 16,544.86 | 09/14/89 |
| 11. | 09/23/88 | 04/85 | 11,898.93 | 09/14/89 |
| 12. | 09/23/88 | 01/86 | 36,883.65 | 09/14/89 |
| 13. | 09/23/88 | 02/86 | 31,284.43 | 09/14/89 |
| 14. | 09/23/88 | 03/86 | 17,240.66 | 09/14/89 |
| 15. | 09/23/88 | 04/86 | 12,395.17 | 09/14/89 |
| 16. | 09/23/88 | 01/87 | 16,395.49 | 09/14/89 |
| 17. | 09/23/88 | 02/87 | 13,508.05 | 09/14/89 |

## SUMMARY JUDGMENT STANDARD

In order to prevail on a motion for summary judgment, the movant must meet the statutory criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part:

[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Donald v. Polk County*, 836 F.2d 376, 378–379 (7th Cir. 1988).

In 1986, the Supreme Court decided a trilogy of cases which encourage the use of summary judgment as a means to dispose of factually unsupported claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." *Farries v. Stanadyne/Chicago Div.*, 832 F.2d 374, 378 (7th Cir.1987) (quoting *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n*, 806 F.2d 146, 149 (7th Cir.1986)). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514; *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita*, 475 U.S. at 585–586, 106 S.Ct. at 1355–1356. There is no genuine issue for trial if the record, taken as a whole, does not lead a rational trier of fact to find for the non-moving party. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250, 106 S.Ct. at 2510–2511 (citations omitted); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.*, 822 F.2d 656, 659 (7th Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987).

Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings, rather its response must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53; *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *Patrick v. Jasper County*, 901 F.2d 561, 564–566 (7th Cir.1990). Moreover, all reasonable inferences to be drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Davis v. Chicago*, 841 F.2d 186, 189 (7th Cir.1988); *Marine Bank, Nat. Ass'n v. Meat Counter, Inc.*, 826 F.2d 1577, 1579 (7th Cir.1987); *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis–Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160

| Assessment Number | Assessment Date | Taxable Period | Amount of Assessment | Date lien was recorded |
|---|---|---|---|---|
| 18. | 09/23/88 | 03/87 | 10,951.23 | 09/14/89 |
| 19. | 09/23/88 | 04/87 | 5,497.79 | 09/14/89 |
| 20. | 01/30/89 | 01/88 | 13,349.10 | 09/14/89 |
| 21. | 04/27/89 | 02/88 | 11,080.76 | 09/14/89 |
| 22. | 07/28/89 | 03/88 | 5,547.77 | 01/12/90 |
| 23. | 11/02/89 | 04/88 | 2,733.85 | 01/12/90 |
| 24. | 02/09/90 | 01/89 | 15,885.85 | 04/18/90 |
| 25. | 05/02/90 | 02/89 | 12,925.89 | 06/27/90 |
| 26. | 08/03/90 | 03/89 | 6,427.42 | 11/05/90 |

(1987); *In re Calisoff,* 92 B.R. 346, 350–351 (Bankr.N.D.Ill.1988). Furthermore, the existence of a material factual dispute is Sufficient only if the disputed fact is determinative of the outcome under the applicable law. *Donald v. Polk County,* 836 F.2d at 379; *Wallace v. Greer,* 821 F.2d 1274, 1276 (7th Cir.1987); *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983).

■ Rule 56(d)[4] provides for the situation when judgment is not rendered upon the whole case, but only a portion thereof. The relief sought pursuant to subsection (d) is styled partial summary judgment. Partial summary judgment is available only to dispose of one or more counts of the complaint in their entirety. *Commonwealth Ins. Co. v. O. Henry Tent & Awning Co.,* 266 F.2d 200, 201 (7th Cir.1959); *Biggins v. Oltmer Iron Works,* 154 F.2d 214, 216–217 (7th Cir.1946); *Quintana v. Byrd,* 669 F.Supp. 849, 850 (N.D.Ill.1987); *Arado v. General Fire Extinguisher Corp.,* 626 F.Supp. 506, 509 (N.D.Ill.1985); *Capitol Records, Inc. v. Progress Record Distributing, Inc.,* 106 F.R.D. 25, 28 (N.D.Ill.1985); *In re Network 90°, Inc.,* 98 B.R. 821, 823 (Bankr.N.D.Ill.1989) *aff'd In re Network 90 Degree, Inc.,* 126 B.R. 990 (N.D.Ill.1991); *Strandell v. Jackson County,* 648 F.Supp. 126, 136 (S.D.Ill.1986). Rule 56(d) provides a method whereby a court can narrow issues and facts for trial after denying in whole or in part a motion properly brought under Rule 56. *Capitol Records, Inc. v. Progress Record Distributing, Inc.,* 106 F.R.D. at 29. However, the Court may not enter a final "partial summary judgment" under Rule 56(d) when such judgment would not entirely dispose of the claim or any count therein. *See In re Farley, Inc.,* 146 B.R. 739, 743 (Bankr.N.D.Ill.1992) and collected citations.

**4.** Rule 56 is incorporated in Bankruptcy Rule 7056. It states in pertinent part:

**(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts

## DISCUSSION

The Internal Revenue Code provides that if any person liable to pay any tax neglects to pay that tax after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 26 U.S.C. § 6321. This lien arises at the time of assessment and continues until the liability is paid. 26 U.S.C. § 6322. As to third parties, the lien is not valid against "any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof ... has been filed" by the IRS. 26 U.S.C. § 6323(a). Similarly, state tax liens also arise upon assessment. *See* Ill.Rev.Stat. ch. 120, ¶ 11–1101(b); Ill. Rev.Stat. ch. 120, ¶ 444a. Courts have allocated priority between assessments based upon "the first in time is the first in right." *United States v. City of New Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520.

The IRS's position is simple. It asserts that as long as its assessment has come first, no other assessment can prime the IRS assessment even if recorded prior to the IRS recording its assessment. According to the IRS's reasoning, therefore, if it assessed a tax on Day 1 and subsequently recorded its assessment on Day 10, no other taxing authority's subsequent assessment could have priority even if that assessment were made and recorded on Day 2. By virtue of the IRS's assessment occurring first, it always has priority over all subsequent assessments.

are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of the damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Fed.R.Bankr.P. 7056(d).

The IDR and IDES agree with the IRS's assertion. In fact, the IDR asserts the same position as to its tax assessments vis-a-vis subsequent assessments. An IDR assessment, therefore, takes priority over a subsequent assessment even when the subsequent assessment is recorded first.

The IDES argues a slightly different position from either the IRS or the IDR. The IDES claims a priority interest over any subsequent assessment only if the IDES records its assessment prior to any subsequent assessment's recording. In other words, if the IDES assessed a tax on Day 1 and subsequently recorded its assessment on Day 10, a subsequently assessed and recorded tax on Day 2 would have priority.

Relying on the first in time is first in right approach, the IRS argues that its 1984 and 1987 assessments have priority because they occurred prior to any other assessments. The IDR and IDES concede that the date of assessment establishes the relevant date for determining lien priority but they argue two scenarios which they claim defeat the IRS's claimed priority. First, they contend that assessments 1 through 5 are unsecured priority tax claims. Even though the IRS recorded these tax assessments, the IDR and IDES argue that these assessments are incapable of being secured by the IRS's subsequent recording because any such lien right was extinguished upon confirmation of the plan. Consequently, the IDR and IDES assert their subsequently recorded assessments make them secured creditors, and thus entitled to priority.

Second, the IDR and IDES argue that assessments 6 through 9 arise from prepetition tax liabilities for which the IRS failed to file a claim in the first bankruptcy, and consequently have been discharged. Because invalid, the IDR and IDES argue their secured assessments occurred first.

The logical starting point in this Court's analysis is Section 1141[5] of the Code. Confirmation of a Chapter 11 plan has three effects. First, the plan provisions bind all creditors whether or not the creditor is impaired and whether or not the creditor files a claim. 11 U.S.C. § 1141(a). Second, all property vests in the debtor, 11 U.S.C. § 1141(b), "free and clear of all claims and interests of creditors ... except as otherwise provided in the plan or in the order confirming the plan." 11 U.S.C. § 1141(c). Third, a debtor is discharged of all debts arising before confirmation, whether or not a proof of claim is filed. 11 U.S.C. § 1141(d). The provisions of Section 1141 are not to be taken lightly because after confirmation the plan operates to redefine a creditor's interest in the debtor's property. A creditor no longer can enforce its pre-confirmation lien rights but rather may enforce only those rights granted in the plan. *In re Arctic Enterprises, Inc.*, 68 B.R. 71, 79 (D.Minn.1986).

A number of courts have addressed the effect of confirmation under Section 1141 and have recognized that confirmation operates to bind all parties to the terms of the plan. *See, e.g., In re Laing, M.D.*, 146 B.R. 482, 484 (Bankr.N.D.Okla.1992); *In re Riverside Nursing Home*, 137 B.R. 134 (Bankr.S.D.N.Y.1992). In a thorough discussion of the binding effect of a confirmed plan, the court in *In re Blanton Smith*

---

**5.** Section 1141 provides in pertinent part:
(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
\* \* \* \* \* \*

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor....
11 U.S.C. § 1141(a) and (c).

*Corp.,* 81 B.R. 440 (Bankr.M.D.Tenn.1987) stated:

> [T]he Supreme Court [has] determined that the order confirming a plan of reorganization is **res judicata.** *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), *reh. den'd,* 305 U.S. 675, 59 S.Ct. 250, 83 L.Ed. 437 (1938).

In subsequent decisions, the courts of other circuits, relying on *Stoll,* have held a confirmation order to be equivalent to a judgment. In *Miller v. Meinhard–Commercial Corporation,* 462 F.2d 358, 360 (5th Cir. 1972), the Fifth Circuit stated:

> An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court, and any attempt by the parties or those in privity with them to relitigate any of the matters that were raised or could have been raised therein is barred under the doctrine of *res judicata.* (citations omitted).

81 B.R. at 442.

Additionally, Section 1141 provides that a confirmed Chapter 11 plan works to discharge a debtor from all pre-confirmation debts "[e]xcept as otherwise provided ... in the plan, or in the order confirming the plan...." 11 U.S.C. § 1141(d)(1). The Third Circuit addressed the impact of this discharge language and noted that:

> the discharge provided by Section 1141(d) presumes that, in the process of formulating and voting on a reorganization plan, all classes of claimants will be able to use whatever leverage they may have, such as priority status, to effect the best treatment they can obtain for their particular claims. However, once the reorganization plan is approved by the bankruptcy court, each claimant gets a "new" claim, based upon whatever treatment is accorded to it in the plan itself. Thereafter, each claimant's remedies for any future nonpayment of claims acknowledged in the plan are limited to the usual remedies for the type of claim granted by the plan's provisions.

*In re Benjamin Coal Co.,* 978 F.2d 823, 827 (3rd Cir.1992).

In this case, the Debtor's plan treated the IRS's 1984 assessments for tax liability as unsecured priority tax debts to be paid under the terms of the plan within six years. Thus, the IRS's tax assessments were transformed into a "new" unsecured priority claim. The IRS, however, recorded those tax assessments after confirmation of the plan, and now claims that it has standing as a secured creditor, and thus has a prior secured interest over the claims of the IDR and IDES. The IRS is not a secured creditor and cannot defeat the terms of the plan (and its status as an unsecured creditor) by subsequently recording its pre-petition assessments. Any failure on the part of the Debtor to comply with the terms of the plan entitled the IRS to seek compliance with the terms of the plan or conversion or dismissal of the case. The IRS cannot subsequently record its tax assessments in an attempt to obtain secured status.

Adopting the IRS's position that it can leapfrog over other plan participants would result in parties recording their pre-petition unsecured judgments or unperfected lien rights after confirmation in hopes of elevating the status of their claim. Allowing such activity without plan approval would wreak havoc upon contemplated reorganizations.

The IRS cites *In re White Farm Equipment Co.,* 943 F.2d 752 (7th Cir.1991) for support of their position that its prior assessments enjoy the same priority in the second bankruptcy as the first. In *White Farms,* the Seventh Circuit held that an unsecured priority tax claim for withholding taxes in a debtor's first Chapter 11 case retains its priority claim status in the debtor's second Chapter 11 case. *Id.* at 756. In this case, the IRS held an unsecured priority tax claim in the first bankruptcy, and according to *White Farms,* holds the same unsecured priority claim in this case. The *White Farms* decision did not address, and thus does not support the IRS's contention that it may now assert a secured interest by its subsequent recording of its assessment. The Court finds that IRS as-

sessments 1 through 5 are unsecured priority tax debts.[6]

■ The Court next turns to the IRS assessment numbers 6 through 9. As noted, these assessments occurred after confirmation in the first case but were for prepetition tax debts owed. Section 1141(d) provides:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
>
> (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
>
> (ii) such claim is allowed under section 502 of this title; or
>
> (iii) the holder of such claim has accepted the plan; and
>
> (B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

11 U.S.C. § 1141(d)(1). Because assessments 6 through 9 arose from pre-petition tax liabilities, those debts were discharged upon confirmation of the plan. The IRS' subsequent recording of its notice of tax liens in no way changed the status of these discharged debts. The Court finds that IRS assessments 1 through 9 are not secured against property of this estate. Having disposed of IRS assessments one through nine, the Court turns to the next earliest assessments which are held by the IDR and IDES.

## IDR and IDES Assessments

■ IDR assessment 1 was made during the Debtor's first bankruptcy which renders it void ab initio. *In re BNT Terminals, Inc.*, 125 B.R. 963 (Bankr.N.D.Ill. 1990) (actions taken in violation of the stay are void ab initio). Similarly, the IDES issued assessments 1 through 7 in violation of the automatic stay, and thus they are void. All parties concede these assessments are not enforceable against the estate.

■ After these unenforceable assessments comes IRS assessment number 10. Using the first in time is first in right approach, this IRS assessment has first priority. The IDR and IDES, however, dispute the amount of the assessment which creates a substantial issue of fact. Although the Court finds that IRS assessment number ten has priority over the assessments of the IDR and IDES, the Court is unable to grant summary judgment absent a hearing to determine the amount assessed on October 19, 1987. The Court turns to the next earliest assessment which is held by the IDR.

IDR assessments 2 through 16 occurred during the period March 4, 1988 through and including July 8, 1988. Because these assessments were made prior to the IRS's next assessment of September 4, 1989 and the IDES first assessment of September 23, 1988, the IDR 2 through 16 assessments have priority. Next in line would come the IDES assessments 8 through 22 because they were recorded prior to when the IRS's subsequent assessments were recorded. IRS assessments 11 through 14 would follow as they occurred prior to IDR's next assessment of September 6, 1989 and before the IDES next assessment of November 2, 1989. IDR assessments 17

---

**6.** This Court is aware of the Seventh Circuit case of *In re Tarnow*, 749 F.2d 464 (7th Cir.1984) which neither party has cited. In *Tarnow*, the Court of Appeals recognized that liens pass through bankruptcy unaffected unless a party in interest requests the court to allow or disallow the claim on which the lien is based. *See Tarnow*, 749 F.2d at 465 (collecting cases). This line of case law is predominantly composed of cases construing chapter 7 which justifies the rationale for allowing liens to pass through

bankruptcy unaffected because unlike a Chapter 11 there is no other method of avoiding lien rights in a Chapter 7 absent a Section 506 lien avoidance proceeding. In contrast is Chapter 11 where the debtor and creditors naturally look to the plan of reorganization as the final determination of the parties' rights. Moreover, the *Tarnow* reasoning deals with perfected liens passing through bankruptcy unlike the present proceeding which involves an unperfected lien right allegedly passing through confirmation.

through 32 would be next followed by IRS assessment 15. The Court need not go any further because the funds have been exhausted. The following table will recap the priority of assessments:

| Priority | Agency | Assessment Number |
|---|---|---|
| 1 | IRS | 10 |
| 2 | IDR | 2 through 16 |
| 3 | IDES | 8 through 22 |
| 4 | IRS | 11 through 14 |
| 5 | IDR | 17 through 32 |
| 6 | IRS | 15 |

*See* IDR Exhibits A, B & C. Although the Court has established priority for purposes of exhausting the fund, there exists a dispute as to the amount assessed by the IRS.

As earlier noted, Rule 56 allows the Court to frame and narrow the triable issues if the court finds that such an order would be helpful to the progress of the litigation. *Farley*, 146 B.R. at 743. In this proceeding, the entry of an interlocutory order in the form of a pre-trial order would be appropriate. Such an order will conserve judicial time and resources. Further, such an order would significantly advance the resolution of the factual and legal matters involved which, in turn, would further the pending litigation as well as the completion of the Debtor's case. Consequently, the Court will deny both motions for summary judgment and this matter will be set for an evidentiary hearing pursuant to the accompanying order.

### CONCLUSION

The cross-motions for summary judgment filed by the United States of America and the State of Illinois are denied. Pursuant to Rule 56(d), "upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly." In other words, the facts established in this opinion are deemed determined and are not to be relitigated at trial. The sole issue to be heard by the Court at trial is the amount assessed by the IRS on the dates in question. By order entered separately this day, the Court will set a status date of August 26, 1993 at 10:30 a.m. for the purpose of setting a date for an evidentiary hearing.