**In re OMEGA CORPORATION, Debtor.**

**OMEGA CORPORATION and Turbine Technologies, Inc., Plaintiffs,**

v.

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 91–53329. Adv. No. 94–5185.**

United States Bankruptcy Court, D. Connecticut.

Nov. 1, 1994.

---

Francis A. Miniter, Minter & Associates, Hartford, CT, for plaintiff Turbine Technologies, Inc.

Stephen C. Best, Sp. Asst. U.S. Atty., East Hartford, CT, Deirdre A. Martini, Asst. U.S. Atty., Bridgeport, CT, for I.R.S.

## MEMORANDUM AND ORDER ON COMPLAINT FOR AN INJUNCTION AND APPLICATION FOR PRELIMINARY INJUNCTION

ALAN H.W. SHIFF, Bankruptcy Judge.

### BACKGROUND

The plaintiff, Turbine Technologies, Inc., seeks to enjoin the Internal Revenue Service ("IRS") from filing a notice of tax lien against its assets. The relevant facts, which are undisputed, are drawn from (i) the Stipulation of Facts by Turbine and the IRS, filed August 24, 1994; (ii) a Letter from Special Assistant United States Attorney Stephen C. Best, filed September 13, 1994; and (iii) Turbine's Reply To Questions Posed By Court, filed September 13, 1994.

Articles II, III, and IX of the Second Amended Plan of Reorganization, filed by the debtor, Omega Corporation, and confirmed on February 14, 1992, provided that Turbine, as purchaser of Omega's assets, would pay the IRS (i) Omega's tax liabilities in 60 monthly payments, resulting in payments of $7,371.87 per month, and (ii) Omega's administrative liabilities in 12 monthly payments, resulting in payments of $8,989.11 per month.[1] The IRS filed proofs of claim indi-

---

1. The Plan called for the administrative claims to be paid in full on the effective date, unless otherwise agreed, as was apparently the case with the IRS's claims. Further, while Article IX stated that the tax claims were to be paid over 36 months, Article III stated that the term was 60 months, and the Stipulation indicates that the latter was correct.

cating that its claims were unsecured priority claims, and the Plan treated them as such. Turbine defaulted in July 1992 and made no further payments until December 1993. In addition, the tax liabilities treated in the Plan were reduced by over $160,000.00 due to an amended tax return filed by Omega post-confirmation.

On May 13, 1993, Turbine filed a motion to modify the Plan to cure the default and account for the reduced overall tax liability, but it withdrew the motion in response to an objection by the IRS. On December 8, 1993, Turbine executed IRS Form 2504, Agreement to Assessment and Collection of Additional Tax and Acceptance of Overassessment, covering all of the then due and owing tax liabilities originally treated in the Plan. By executing that form, Turbine consented to "the immediate assessment and collection of any additional tax and penalties and accept[ed] any overassessment (decrease in tax and penalties) shown above, plus any interest provided by law." Form 2504 included interest at the rate of 6.2% compounded daily. Turbine's counsel also executed a December 13, 1993 letter (the "Letter Agreement") under which Turbine agreed to make monthly payments of $5,316.69, which would increase to $10,633.38 commencing in January 1995 and continuing until the arrearage was paid, whereupon the monthly payments of $5,316.69 would resume. Notwithstanding Turbine's post-confirmation execution of Form 2504 and the Letter Agreement, Turbine now seeks to enjoin the IRS from filing a notice of tax lien against its assets, arguing that such a notice would elevate the IRS from an unsecured priority creditor to a secured creditor in violation of the Plan.[2]

### DISCUSSION

Section 1141 provides in relevant part:

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security

holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

Section 1142 provides:

(a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.

(b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

█ I note at the outset that this court has the authority under § 105(a) to enter injunctions that are necessary to restrain actions which "might impede the reorganization process." *MacArthur Co. v. Johns Manville Corp. (In re Johns–Manville Corp.)*, 837 F.2d 89, 93 (2d Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). *See Eastern Air Lines, Inc. v. Rolleston (In re Ionosphere Clubs, Inc.)*, 124 B.R. 635, 642 (S.D.N.Y.1991) (bankruptcy court's injunction power "extends to creditor's actions against third parties, when such an injunction is necessary to protect the debtors and the parties in interest to the reorganization in their attempt to reorganize successfully."). *Brandt–Airflex Corp. v. Long Island Trust Co., N.A. (In re Brandt–Airflex Corp.)*, 843 F.2d 90 (2d Cir.1988), relied upon by the IRS, is not to the contrary. That decision holds that § 505 does not give bankruptcy

---

**2.** Turbine also filed a Motion for Order of Clarification of Status of Creditor. That motion did not seek an interpretation of the Plan's provisions, which unambiguously refer to the IRS's claims as unsecured priority claims. Rather, as Tur-

bine's counsel acknowledged at oral argument, its goal in filing the motion and all other pleadings in this proceeding is to obtain an injunction against the IRS.

courts jurisdiction to determine the amount or legality of a tax assessed against a non-debtor. The instant proceeding does not challenge the amount or legality of the taxes in question, but rather the right of the IRS to pursue collection activities against Turbine notwithstanding the confirmed plan. *Official Committee of Unsecured Creditors v. PSS S.S. Co., Inc. (In re Prudential Lines, Inc.),* 928 F.2d 565, 574–75 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991).

■ Prior to the execution of Form 2504 and the Letter Agreement, Turbine, as an "entity acquiring property under the plan," arguably was entitled to the protections of § 1141, and the IRS, as a creditor, was bound by the Plan. The confirmed Plan is binding on the IRS as a creditor and the IRS does not have the power unilaterally to change its treatment under the Plan. *See* § 1141(a); *DePaolo v. United States (In re DePaolo),* 165 B.R. 491, 494 (D.Wyo.1994); *Am. Bank and Trust Co. v. United States (In re Barton Indus., Inc.),* 159 B.R. 954, 962 (Bankr.W.D.Okl.1993); *Custom Arc Mfg., Inc. v. United States (In re Custom Arc Mfg., Inc.),* 125 B.R. 843, 844 (Bankr. M.D.Fla.1991). Thus, the IRS may not generally assert post-confirmation liens for prepetition claims which it filed as unsecured claims and which were treated as such by the confirmed Plan.[3] The IRS is of course correct in asserting that a federal tax lien arises automatically upon assessment, but is entitled to priority against third parties only upon proper recordation. *See* 26 U.S.C.A. §§ 6321, 6322, 6323(a) (West 1989 & Supp. 1994). But here, the IRS made no prepetition assessment, nor did it oppose confirmation of the Plan on the ground that the Plan improperly treated it as a priority unsecured, rather than a secured, creditor. In the absence of Turbine's post-petition default and the new agreements entered into, the post-confirmation assessment and the proposed filing of a notice of tax lien would improve the IRS's position in a way prohibited without further order of this court. But in this case Turbine did default and did voluntarily enter into post-confirmation agreements to remedy the default. Those facts are relevant to the determination of whether this court has jurisdiction to resolve the instant dispute.

■ In a Bankruptcy Act case, the Second Circuit cautioned that reorganization courts are not to "keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction for a variety of purposes, extending from complete supervision of the new business to modifications of detail in the reorganization." *N. Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.,* 143 F.2d 938, 940 (2d Cir.1944). *Peerless* held that a reorganization court nevertheless retains jurisdiction "to protect its original confirmation decree, prevent interferences with the execution of the plan, and otherwise aid in its operation." *Id.* The concept of the bankruptcy court's limited post-confirmation jurisdiction is reflected in § 1142, which generally authorizes the court to make orders "necessary for the consummation of the plan." *See* Rule 3020(d), Fed.R.Bankr.P. (after confirmation, court may issue any order "necessary to administer the estate"). Thus, courts have generally held that post-confirmation jurisdiction is retained only as to "matters involving the execution, implementation, or interpretation of the plan's provisions, and to disputes requiring the application of bankruptcy law." *Zahn Assocs., Inc. v. Leeds Bldg. Prods., Inc. (Matter of Leeds Bldg. Prods., Inc.),* 160 B.R. 689, 691 (Bankr. N.D.Ga.1993). *Accord In re Jr. Food Mart of Arkansas, Inc.,* 161 B.R. 462, 463 (Bankr. E.D.Ark.1993) ("The purpose of post-confirmation jurisdiction is essentially and necessarily limited to protecting the order con-

---

**3.** The IRS relies on *United States v. W.F. Monroe Cigar, Co. (In re W.F. Monroe Cigar, Co.),* 166 B.R. 110 (N.D.Ill.1994), for the proposition that the IRS may record post-confirmation notices of tax lien for claims treated by the confirmed plan as priority unsecured claims. That case is distinguishable because there (i) the IRS made prepetition assessments, and so had prepetition liens, *see* 157 B.R. 125, 126–27 & n. 1 (Bankr.N.D.Ill. 1993); (ii) the case involved successive chapter 11 filings, which the district court stated was "not anticipated by Congress when it enacted § 1141", 166 B.R. at 113; (iii) but for the existence of the successive filings, the district court would have ruled against the IRS on the ground that it waived its right to assert a lien by filing a proof of claim showing the claim to be unsecured, *id.;* and (iv) the district court assumed that the filing of the lien notices did not improve the IRS's position because the plan already provided for full payment of the IRS's claims, *id.*

firming the plan and preventing interference with the execution of the plan."); *Neptune World Wide Moving, Inc. v. Schneider Moving & Storage Co. (In re Neptune World Wide Moving, Inc.)*, 111 B.R. 457, 462 (Bankr.S.D.N.Y.1990); *Pennsylvania Cos., Inc. v. Stone (In re Greenley Energy Holdings of Pennsylvania, Inc.)*, 110 B.R. 173, 184 (Bankr.E.D.Pa.1990) (bankruptcy court retains jurisdiction to resolve disputes arising from patent ambiguities in confirmed plan or which affect operation of the plan). Disputes arising post-confirmation are not generally within the scope of that retained jurisdiction. *Matter of Leeds Bldg. Prods., Inc., supra*, 160 B.R. at 691; *accord In re Ambassador Hotel Corp.*, 124 F.2d 435, 437 (2d Cir.1942) (Bankruptcy Act) ("[T]he bankruptcy court by confirming a plan of reorganization does not guarantee that the plan will be carried out regardless of what may befall the new corporation; nor does it have ancillary jurisdiction to control litigation respecting future events which may affect the new corporation's ability to carry out the plan.").

■ At its broadest possible scope, this court's post-confirmation jurisdiction is limited to the jurisdiction retained under the Plan. *Hosp. and Univ. Property Damage Claimants v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 7 F.3d 32, 34 (2d Cir.1993). Article XIV. e., f., i., and j. of the Plan purported to retain jurisdiction to "adjudicate all Claims as to a security or ownership interest in any property or *the Debtor*"; "enter any orders including injunctions to enforce the title, rights and powers of *the Debtor*"; "enter any order reasonably necessary in order to enforce and interpret *the terms and conditions of this Plan*"; and "make such other orders as are necessary or appropriate to carry out *the provisions of this Plan*" (emphasis added). Even if I accept Turbine's argument that it stands in Omega's shoes, Form 2504 and the Letter Agreement materially altered Turbine's obligations and the IRS's rights with respect to those obligations. The quoted provisions are not broad enough to empower this court to enforce those post-confirmation agreements.

The post-confirmation constriction of the bankruptcy court's jurisdiction results not from a change in the statutory basis for jurisdiction—the court continues to have jurisdiction over proceedings arising under title 11 or arising in or related to a title 11 case, *see* 28 U.S.C.A. § 1334(b) (West 1993)—but rather from the fact that the universe of matters related to a case is diminished once confirmation is achieved. Even where the plan provides for a broad retention of jurisdiction, "a bankruptcy court obviously cannot expand its subject matter jurisdiction beyond the jurisdictional grant provided in 28 U.S.C. § 1334." *United States Lines, Inc. v. Am. S.S. Owners Mut. Protection and Indem. Ass'n (In re United States Lines, Inc.)*, 169 B.R. 804, 816 (Bankr.S.D.N.Y.1994); *accord Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir.1994); *In re DN Assocs.*, 165 B.R. 344, 347 (Bankr.D.Me.1994); *Portfolio Lease Funding Corp., No. 1 v. Seagate Technology, Inc. (In re Atl. Computer Sys., Inc.)*, 163 B.R. 704, 707 (Bankr.S.D.N.Y. 1994). A proceeding is related to a bankruptcy case and thus within the outside limits of matters a bankruptcy judge may hear only if "its outcome might have any 'conceivable effect' on the bankrupt estate," or if it has "any significant connection" with that estate. *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir.1992); *see Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984).

Confirmation of the Plan vested title to all property of the estate in Omega, *see* § 1141(b), which then sold that property on the effective date of the Plan to Turbine free and clear of all liens, claims, and encumbrances. While this court has jurisdiction to enforce its orders, including the Plan and the order confirming it, Turbine has voluntarily entered into a new agreement with the IRS, the terms of which are reflected in Form 2504 and the Letter Agreement. The Plan did not contemplate any reduction in payments to the IRS or indicate that the liabilities to the IRS were disputed or might be affected by an amended tax return. The instant proceeding does not "arise under" title 11 because it does not involve the enforcement of the Plan, *see* § 1142, nor does it "arise in" this chapter 11 case merely because it was filed in this case. *See Monaco v. United States Dep't of Educ. (In re County Schools, Inc.)*, 163 B.R. 424, 427–28 (Bankr.D.Conn.1994). The outcome of the instant dispute can have no conceivable effect

on the bankruptcy estate, and it is outside of the scope of this court's order confirming the Plan. That is true notwithstanding Turbine's allegation that IRS representatives made oral assertions that Form 2504 was not intended to expand the IRS's rights under the Plan. Another court with jurisdiction may resolve the parties' dispute which essentially concerns a post-confirmation contract.[4] The cases relied upon by Turbine, including *Martin v. United States (In re Martin)*, 150 B.R. 43 (Bankr.S.D.Cal.1993), *appeal dism'd*, 172 B.R. 644 (S.D.Cal.1994), are readily distinguishable because they did not involve post-confirmation modifications of obligations provided for by the plan.[5]

Turbine's argument that this court has to have jurisdiction to prevent collusion between a debtor's successor and a creditor is unpersuasive. The villainy of collusion is its potential harm to strangers and that would not happen to any party in interest which sought the enforcement of the order confirming the Plan, as to which this court does maintain jurisdiction. *See* § 1142(b). Further, in view of the fact that the Plan required that the only secured creditor and all unsecured creditors were to be paid in full before 1993, any collusion could have no adverse impact on those creditors.[6]

■ I also conclude that the Anti–Injunction Act (the "Act"), 26 U.S.C.A. § 7421 (West 1989), which generally prohibits suits to restrain the assessment or collection of taxes except pursuant to specified provisions of the Internal Revenue Code, precludes the issuance of an injunction to prevent the IRS from exercising any rights against Turbine arising from Form 2504 and the Letter Agreement.[7] Turbine relies on *Bostwick v. United States (Matter of Bostwick)*, 521 F.2d 741 (8th Cir.1975), which held that the Act did not prohibit an injunction to prevent the IRS from assessing and collecting taxes against a debtor. Even if I follow *Bostwick*, and even if I accept Turbine's argument that *Bostwick* should be extended to permit this court to enforce *the Plan* against the IRS in favor of Turbine as purchaser of Omega's assets, Turbine's voluntary entry into a new agreement with the IRS made Turbine liable for the taxes irrespective of the provisions of the Plan. That factual distinction brings this case within the general rule that the Act prohibits courts from enjoining the collection of taxes from non-debtors whose liability is independent of the debtor's. *See Am. Bicycle Ass'n v. United States (In re Am. Bicycle Ass'n)*, 895 F.2d 1277, 1280 (9th Cir.1990); *A to Z Welding & Mfg. Co., Inc. v. United States*, 803 F.2d 932, 933 (8th Cir.1986).[8]

Finally, even if this court had jurisdiction and the Anti–Injunction Act were inapplicable, Turbine could not obtain the relief it

---

**4.** It is noted that only a plan proponent or the reorganized debtor may seek modification of a plan after its confirmation but before substantial consummation. *See* § 1127(b). Here not only was the Plan arguably substantially consummated, since all payments except those on priority tax claims were to have been completed within six months after its effective date, *see* § 1101(2), Turbine had no right to seek modification. Those code limitations underscore the isolation of the instant dispute from this bankruptcy case. *See In re DN Assocs., supra*, 165 B.R. at 347.

**5.** I need not address the IRS's argument that the debts are nondischargeable under § 1141(d)(3) and that the IRS may therefore pursue all available avenues of collection irrespective of the provisions of the confirmed Plan. It is noted that *Martin* rejected a similar argument where the IRS filed a proof of claim and participated in the plan confirmation process. Nor need I address the argument that the IRS could file its lien notices upon default under the Plan even absent the Form 2504 and Letter Agreement. *See Paul v. Monts*, 906 F.2d 1468, 1474–76 (10th Cir. 1990) (discussing availability of non-Code remedies upon breach of plan provision).

**6.** The payment to the secured creditor was on the "Effective Date," or 30 days after the confirmation order became a final order. Payments to unsecured creditors were made over a six month period after that date. *See* Plan at Articles I.12., VI.

**7.** Subsection (b) of I.R.C. § 7421 specifically prohibits suits to restrain the assessment or collection of the tax liability of the transferee of a taxpayer's property, such as Turbine.

**8.** Judicial exceptions to the Act have been recognized where (i) the plaintiff is certain to succeed on the merits of challenging the IRS's assessment and would be irreparably harmed without the injunction, or (ii) the plaintiff has no alternative forum in which to pursue its challenge to the legality of the tax. *See Bajenski v. Chivatero*, 818 F.Supp. 1085, 1087 (N.D.Ohio 1993). Neither exception applies here. Turbine does not challenge the validity of the assessment, to which it consented, and has not alleged that it could not contest the propriety of the IRS's collection procedures in another forum.

seeks. This court can enforce the order confirming the Plan, but were it to do so, Turbine would be required to cure its default by paying the much larger amount contemplated by the Plan, not the smaller monthly payments reflected in the Letter Agreement. *See* § 1142(a) ("any entity organized ... for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court."). It is apparent, however, that Turbine does not seek that result. Instead, it asks this court to give it not only the benefit of § 1141(a) to bind the IRS to the confirmed Plan, but also the benefit of the Letter Agreement, by which its obligation to the IRS is less than what it would have been under the Plan. This court of equity will not permit Turbine to enjoy all of Omega's rights but avoid its corresponding duties.

### ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the captioned adversary proceeding is dismissed as this court lacks jurisdiction over its subject matter, and the relief sought is in any event unavailable to Turbine.